United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABAD OVIEDO ARREDONDO,<br>Petitioner,<br>v.<br>SERGIO ALBARRAN, et al.,<br>Respondents. | Case No. 26-cv-13993-EKL<br><br>**ORDER GRANTING IN PART MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 2 |

On November 17, 2026, Petitioner Abad Oviedo Arredondo filed a petition for writ of habeas corpus and an *ex parte* motion for temporary restraining order ("TRO Motion") after being arrested by U.S. Immigration and Customs Enforcement ("ICE"). ECF Nos. 1, 2. Petitioner seeks his immediate release from ICE custody pending these proceedings, as well as other forms of relief. *See* Mot., ECF No. 2. The Court ordered and received expedited briefing from the government, and Petitioner filed a reply. ECF Nos. 6, 7, 8. The Court carefully reviewed the parties' submissions and legal authorities. For the following reasons, the TRO motion is GRANTED IN PART as described below.

## I. BACKGROUND

Petitioner Abad Oviedo Arredondo is an approximately 42-year-old man living in San Rafael, California, with his brother. Oviedo Arredondo Decl. ¶ 2, ECF No. 2-2 ("Pet'r Decl."). Petitioner works six days a week "for a small construction company in Pinole" and uses his income to help support his 88-year-old mother in Mexico. *Id.* ¶¶ 3-4. In addition to working, he has volunteered with Canal Alliance distributing food on weekends, "occasionally attend[s] Catholic Church in San Rafael," and spends his time off with his family. *Id.* ¶ 4. He explains: "I am a person who dedicates myself to working for my family and my mother. . . . I have done my

best to live a quiet life and spend time with my family and community here in the United States." *Id.* ¶ 9. Indeed, he has never run into "any problems with the law." *Id.* ¶ 2.

Petitioner was detained in the early morning of November 17, 2026. At or around 5:30 a.m., one or more ICE vehicles began following Petitioner's car. ECF No. 4-1 at 5.[1] At some point, Petitioner pulled into a shopping center and sat in his car, waiting for a coffee shop to open. One or more ICE vehicles activated red-and-blue lights and approached Petitioner's car. *Id.* The parties disagree about the details of what happened next. While the Form I-213 refers to a single "government vehicle," *id.*, Petitioner describes his car as being "boxed" in by four "unmarked" vehicles with "blacked-out windows," Pet'r Decl. ¶ 5. The parties disagree on the exact number of officers and what occurred during the ensuing conversation, including whether the officers identified themselves as being with ICE. Petitioner states that the officers "did not appear to know [his] name or identity" and "did not have an arrest warrant or any other documents." Pet'r Decl. ¶ 5. By contrast, the Form I-213 represents that the officers "told" Petitioner that they "had a warrant for his arrest." ECF No. 4-1 at 6.

What the parties agree upon is that Petitioner provided a Mexican identification card but refused to leave the vehicle, leading to ICE officers' breaking his car window, reaching in through the broken window, unlocking the car door, and then opening the door. *Id.* at 5-6; Pet'r Decl. ¶ 5. The government claims that ICE officers "assist[ed]" Petitioner from the car; Petitioner states that the officers "dragged [him] out of it." ECF No. 4-1 at 6; Pet'r Decl. ¶ 6.

## II. LEGAL STANDARD

The analysis at the TRO and preliminary injunction stages are "substantially identical." *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). In order to obtain a preliminary injunction, Petitioner must establish that: (1) he is likely to succeed on the merits, (2) he faces a likelihood of irreparable harm in the absence of a preliminary injunction, (3) the balance of equities weighs in his favor, and (4) the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *All. for the Wild*

[1] Page numbers are in reference to ECF page numbers.

*Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (citation modified). "Where, as here, the party opposing the injunctive relief is a government entity, the third and fourth factors – the balance of equities and the public interest – merge." *Hubbard v. City of San Diego*, 139 F.4th 843, 854 (9th Cir. 2025) (citation modified).

## III. ANALYSIS

Based on the record currently before the Court, Petitioner is entitled to relief because he has demonstrated at least "serious questions going to the merits and a balance of hardships that tips sharply towards [him]," as well as "a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies*, 632 F.3d at 1135.

Under *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026), Petitioner's arrest and detention are governed by 8 U.S.C. § 1226(a). "There is no dispute that a Form I-200 [warrant, such as the one in this case] must be issued prior to an arrest." Response at 6, ECF No. 7 (citing 8 U.S.C. § 1226(a)). A Form I-200 warrant authorizes arrest "[a]t the time of issuance of the notice to appear ['NTA'], or at any time thereafter and up to the time removal proceedings are completed." 8 C.F.R. § 236.1(b)(1). Here, the record is ambiguous with respect to the exact timing of the NTA's issuance and the warrant's preparation. The government concedes that the NTA was not issued until "during post-arrest processing" – meaning it was issued later than the Form I-200. Response at 8. In addition, the government's records indicate that ICE officers may have been preparing for the arrest on November 16, 2026, further raising questions as to why officers waited until the next day to issue and file the NTA. *See* ECF No. 4-1 at 13 (showing "11/16/2026" as the date at the top of the Form I-200). The government has not adequately explained or substantiated the sequence of these events. Nor has the government shown that a warrantless arrest was permissible or justified under these circumstances. *See* 8 U.S.C. § 1357(a)(2).



United States District Court
Northern District of California

For these reasons, Petitioner has *at least* raised serious questions going to the merits of his procedural due process claim. *See Gonzalez Ochoa v. McCleary*, 816 F. Supp. 3d 921, 927-28 (S.D. Iowa 2026) ("Granted, section 236.1(b)(1) is likely satisfied if the Notice to Appear is issued contemporaneous with the arrest warrant, even if the latter momentarily precedes the former. This is not, however, what happened here."); *Yeleshev v. Larocco*, No. 26-cv-02294-SJB, 2026 WL 1353806, at *2 (E.D.N.Y. May 14, 2026), *appeal docketed*, No. 26-1898 (2d Cir. July 13, 2026). Petitioner has a liberty interest that is *at least* coextensive with the statutory protections afforded by immigration law – that is, government officers must abide by the "statutory framework governing warrantless arrests," which "Congress has established to ensure that such arrests have a valid basis." *Paau Cho v. Albarran*, No. 26-cv-12538-PCP, 2026 WL 3513604, at *4 (N.D. Cal. Nov. 15, 2026). If ICE fails to observe the procedural protections imposed by Congress, there is no bulwark against an erroneous deprivation of liberty. Moreover, requiring the government to comply with the statutory requirements is not burdensome – it is to be expected.

Petitioner has also satisfied the other *Winter* elements. Without a TRO, Petitioner faces irreparable harm from the unconstitutional deprivation of his liberty. *See Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." (citing 11A *Wright & Miller's Federal Practice & Procedure* § 2948.1 (2d ed. 2004))). The balance of the equities and the public interest, which are merged in this case because the government is the opposing party, tip sharply in Petitioner's favor. The government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983). "Faced with a choice between minimally costly procedures and preventable human suffering, . . . the Court concludes that the balance of hardships tips decidedly in petitioner's favor." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1049 (E.D. Cal. 2025) (citation modified) (quoting *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017)). Moreover, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citation omitted). Finally, "[t]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth

United States District Court
Northern District of California

Circuit has recognized that the costs to the public of immigration detention are staggering." *Boaventura v. Mullin*, No. 26-cv-04119-BLF, 2026 WL 1243679, at *2 (N.D. Cal. May 6, 2026) (citation modified).

A TRO immediately releasing Petitioner is appropriate to return him to the status quo. *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018). The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to Petitioner's arrest. *See Kuzmenko v. Phillips*, No. 25-cv-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo).

The Court will not require security under Federal Rule of Civil Procedure 65(c) because there is "no realistic likelihood of harm to the [respondents] from enjoining [their] conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919-20 (9th Cir. 2003); *see also Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999) (stating that Federal Rule of Civil Procedure 65(c) confers upon the district court the "discretion as to the amount of security required, if any").

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioner's Motion for Temporary Restraining Order is **GRANTED IN PART** to restore the status quo pending further briefing and a hearing on this matter. The government is **ORDERED** to immediately return Petitioner to this District and then release Petitioner from the government's custody. The government shall provide a status report confirming Petitioner's release by November 21, 2026.

Additionally, the government is **ORDERED TO SHOW CAUSE** in writing by November 27, 2026, why a preliminary injunction should not issue.[2] Petitioner may file a response by December 1, 2026. The parties shall meet and confer regarding whether to combine

[2] The Court does not reach Petitioner's other requested grounds for relief, which Petitioner and the government should address in subsequent briefing.

United States District Court
Northern District of California

the briefing for the preliminary injunction and petition for the writ of habeas corpus and whether to extend the briefing schedule. The parties shall file a stipulation or a status report by November 23, 2026. The Court will set a hearing if needed.

**IT IS SO ORDERED.**

Dated: November 20, 2026

EUMI K. LEE
United States District Judge